UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAZARO FELIPE NAVARRO-MAURY, <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO, et al. <br><br> Respondents. | Case No. 2:26-cv-00333-TMC <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Lazaro Felipe Navarro-Maury is an individual who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. He petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his detention has become indefinite in violation of the Immigration and Nationality Act ("INA") and that the government's attempts to remove him to Mexico violate his due process rights. Dkt. 17.

For the reasons stated below, the Court GRANTS the petition and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction. Dkt. 17.

## I.   BACKGROUND

Petitioner is a native and citizen of Cuba who was paroled into the United States on November 20, 1995. Dkt. 10 ¶ 4. On October 29, 1998, Petitioner was convicted in an Oregon state court of three counts of attempted murder "for using his vehicle to attempt to run over three

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

victims" and sentenced to 90 months of imprisonment with post-prison supervision for 36 months. *Id*. ¶ 6. U.S. Immigration and Naturalization Services ("INS") then revoked Petitioner's parole because of his attempted murder conviction. *Id*. ¶ 7. After Petitioner's sentence ended and he was released on December 23, 2005, he was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody. *Id*. ¶¶ 7–9. The government issued a notice to appear and charged Petitioner as removeable pursuant to § 212(a)(2)(A)(i)(I) of the INA for being convicted of a crime of moral turpitude. *Id*. ¶ 7.

On January 3, 2006, an immigration judge ("IJ") ordered Petitioner removed from the United States to Cuba. *Id*. ¶ 10; Dkt. 11-2. All parties waived appeal, rendering the order administratively final. Dkt. 17 ¶ 17 (citing Dkt. 10 ¶ 10). On March 27, 2006, the Department of Homeland Security ("DHS") released Petitioner under an order of supervision ("OSUP") "pursuant to Section 241(a)(3) of the INA because there was no procedure in place with the government of Cuba at that time in securing travel documents for Cuban citizens." Dkt. 10 ¶ 11.

On June 1, 2015, Petitioner was convicted and sentenced by an Oregon state court to two years' probation for a misdemeanor charge of harassing communication. *Id*. ¶ 12; Dkt. 11-1 at 6. On November 26, 2020, Petitioner was arrested in Portland for felony domestic abuse charges—strangulation, assault, and harassing communication. Dkt. 10 ¶ 13. However, "[t]he strangulation and assault charges were dismissed, and no complaint was filed on the charge of harassing communication." *Id*.

On October 28, 2025, "DHS revoked the Petitioner's supervised released pursuant to violations of the conditions of his release by being arrested on November 26, 2020." *Id*. ¶ 14. Petitioner was detained and brought to NWIPC, where he remains today. *Id*. Although Petitioner was not provided with advance notice of the revocation, he was given an "informal interview" on

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

October 28 "to afford [him] the opportunity to respond for the reasons of revocation of the order of supervision." *Id*. ¶ 15; Dkt. 17 ¶ 23.

Once Petitioner was re-detained on October 28, Respondents began attempting to deport him to both Cuba and Mexico. Dkt. 10 ¶¶ 14–22. Kurtis Reed, a deportation officer ("DO") with ICE Enforcement and Removal Operations ("ERO") assigned to NWIPC, submitted a declaration detailing these attempts. *Id*. ¶ 1. Reed states that, during a regular visit with Petitioner on October 31, Petitioner "voluntarily stated to a DO that he would like to be removed to Mexico." *Id*. ¶ 16. But when DHS served Petitioner with a Notice of Intent to Remove to Mexico on December 23, Petitioner refused to sign the notice. *Id*. ¶ 17. Petitioner did the same on January 9, 2026, claiming a fear of being kidnapped in Mexico. *Id*. ¶ 18. DHS requested a credible fear determination, and, on January 28, U.S. Citizenship and Immigration services ("USCIS") determined that Petitioner did not have a credible fear of removal to Mexico. *Id*. ¶ 20.

Reed states that ICE placed Petitioner on a flight manifest and scheduled him for removal to Mexico, but that these plans were cancelled after the Court issued a temporary restraining order ("TRO") on January 29, 2026, preventing Petitioner's removal. Dkt. 4. Reed also states that DHS is "waiting for a response from the Cuban government on whether they will accept Petitioner if he is removed from the United States." Dkt. 10 ¶ 22.

Petitioner filed his amended petition on April 7, 2026, arguing that (1) his detention has become indefinite because there is no significant likelihood of his removal to Cuba or Mexico in the reasonably foreseeable future; (2) Respondents' revocation of his OSUP violated due

process; and (3) Respondents' attempts to remove him to Mexico violate due process.[1] Dkt. 17 ¶¶ 37–57. Petitioner seeks immediate release, declaratory relief that Respondents acted unlawfully, and injunctive relief preventing Respondents from deporting Petitioner without an order from this Court. Dkt. 17 at 11–12. The government responded on April 29, 2026, and Petitioner replied on May 6, 2026. Dkts. 19, 20.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens[2] subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical

---

[1] Petitioner originally sought relief as a member of the Bond Eligible Class in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). After this Court denied Petitioner's second motion for a TRO and found he was unlikely to succeed on the merits of the *Maldonado Bautista* claim, Dkt. 13 at 4, Petitioner amended his petition to remove that claims and include the due process claims discussed in this order. Dkt. 17.

[2] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (alteration in original) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### III.    DISCUSSION

**A.    Petitioner's detention has become indefinite.**

Petitioner is a noncitizen who has been present in the United States for over 30 years. Dkt. 10 ¶ 4. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Having been detained already for a cumulative nine months since an IJ ordered his

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

removal, Dkt. 10 ¶¶ 11, 14, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

Petitioner's evidence and uncontroverted assertions showing (1) the government's failure to deport him for 20 years, Dkt. 10 ¶¶ 11, 14; (2) that Cuba has "historically refused to accept repatriation of its nationals," Dkt. 17 ¶ 42; Dkt. 10 ¶ 11; and (3) that the government detained Petitioner without securing a travel document to Cuba and failed to remove him between October 2025 and May 2026, *id*. ¶¶ 11, 14, 22, "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. In response, the government does not argue that Petitioner's removal to Cuba is likely, submitting only that DHS is "waiting for a response from the Cuban government on whether they will accept the Petitioner if he is removed from the United States." Dkt. 10 ¶ 22. The government instead argues that it will imminently deport Petitioner to Mexico. Dkt. 18 at 9–11. Respondents assert that "[p]rior to the issuance of the January 29, 2026, Temporary Restraining Order prohibiting the Petitioner's removal, the Petitioner was placed on a flight manifest and scheduled for removal to Mexico via ICE air." Dkt. 10 ¶ 21. Petitioner admits that without the TRO, he would have been deported to Mexico on January 29. Dkt. 17 ¶ 2. According to Respondents, "[t]hat admission is dispositive: it confirms not only that removal is feasible, but that it is imminent upon resolution of this litigation." Dkt. 18 at 10.

As discussed below, Respondents may not remove Petitioner to Mexico (or any third country) without reopening removal proceedings against him. *See infra* Section III.C. The Court agrees with Petitioner that "the relevant question is whether *lawful* removal is foreseeable—not whether the government could effectuate an unlawful removal absent judicial oversight." Dkt. 20

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

at 3. Respondents cannot use an imminent unlawful removal to satisfy their rebuttal burden under *Zadvydas*. And despite Petitioner's initial statement that he would like to be removed to Mexico, he has claimed a fear of being kidnapped in Mexico and twice refused to sign a Notice of Removal to Mexico. Dkt. 10 ¶¶ 16–19. Given that Petitioner refuses to consent to removal to Mexico and Respondents have not reopened his removal proceedings or indicated how long such proceedings would take, Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite.

Because there is not a likelihood that the government will lawfully remove Petitioner to either Cuba or Mexico in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus.

**B.      The revocation of Petitioner's OSUP violated procedural due process.**

Petitioner also argues that his OSUP revocation and re-detention violated procedural due process. Dkt. 17 ¶¶ 46–51. Although the Court need not address this claim because it has already determined Petitioner is entitled to immediate release under *Zadvydas*, the Court agrees and finds this a separate basis for relief.

In considering claims like this, the Court applies the three-part test in *Mathews v. Eldridge* to examine (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025).

Respondents assert that they revoked Petitioner's OSUP "pursuant to violations of the conditions of his release by being arrested on November 26, 2020." Dkt. 10 ¶ 14. But Petitioner (1) was not convicted of any crimes arising from his November 2020 arrest; (2) was only detained by ICE five years after that arrest; and (3) could only challenge the reasons for revocation via an "informal interview" conducted the day he was re-detained. Dkt. 10 ¶¶ 13–15; Dkt. 19-2 at 4. Each of the *Mathews* factors therefore favor Petitioner. *See Singh v. Bondi*, No. C26-0598-SKV, 2026 WL 747104, at *3 (W.D. Wash. Mar. 17, 2026) ("An arrest, standing alone, is not evidence of criminal activity in breach of Petitioner's release conditions"); *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("That Petitioner's alleged violations occurred months before they were acted upon . . . undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.").

## C.    Respondents may not remove or seek to remove Petitioner to a third country without affording him meaningful notice and opportunity to respond.

Petitioner argues that Respondents' attempts to remove him to Mexico violate procedural due process. *See* Dkt. 17 ¶ 30 ("Mexico is not the designated country of removal. ICE's attempt to remove Petitioner to Mexico constitutes a third-country removal requiring additional procedural safeguards."). Despite initially stating that he would like to be removed to Mexico, he has twice refused to sign a Notice of Removal to Mexico and has claimed a fear of being kidnapped in Mexico. Dkt. 10 ¶¶ 16–19.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338–41 (2005); *Dzyuba v. Mukasey*, 540 F.3d

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. Section 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (explaining that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

Ninth Circuit precedent mandates notice and a hearing prior to removal to a third country. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 995, 997 (9th Cir. 2025). And "both the due process clause and the governing

statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held. *Id.* at 1011; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728 (W.D. Wash. 2025).

In light of the foregoing, Petitioner has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents have twice notified Petitioner that they intend to deport him to Mexico and, before the Court's earlier TRO, placed Petitioner on a flight manifest scheduled for removal to Mexico. Dkt. 10 ¶¶ 17–21. Respondents conducted a credible fear interview of Petitioner and determined that he did not have a credible fear of being removed to Mexico. *Id.* ¶ 20. However, Respondents have not reopened removal proceedings against Petitioner. These facts demonstrate a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo*, 2026 WL 237501, at *10 (quoting *eBay*, 547 U.S. at 391).

The Court therefore GRANTS IN PART and DENIES IN PART Petitioner's request for injunctive relief. The Court GRANTS Petitioner's request for injunctive relief preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings. Dkt. 17 ¶ 54.

However, Petitioner's request that the Court "[e]njoin Respondents from removing Petitioner from the United States without further order of this Court" is overly broad. Dkt. 17 at

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

12. The record does not contain sufficient argument or authority to establish that the Due Process clause will be violated in the absence of Court approval of *any* removal. The Court therefore DENIES this request for broader injunctive relief.

### IV.   CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction.

1.   Respondents are ORDERED to release Petitioner Lazaro Felipe Navarro-Maury from custody[3] within ONE day of this Order.

2.   Counsel for Respondents shall submit a status report to the Court by the end of the day on May 21, 2026 confirming Petitioner's release.

3.   Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are PROHIBITED from removing Petitioner to a third country without affording him notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 20th day of May, 2026.

Tiffany M. Cartwright
United States District Judge

---

[3] Subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3)).")

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 11